J-S79003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.L.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.C., MOTHER | : | No. 2446 EDA 2017 |

Appeal from the Decree June 29, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000642-2017,
CP-51-DP-0001023-2014

BEFORE:  GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.:                                    **FILED JANUARY 10, 2018**

G.C. ("Mother") appeals from the decree entered June 29, 2017, in the Court of Common Pleas of Philadelphia County, which involuntarily terminated her parental rights to her minor son, A.L.C. ("Child"), born in April 2006.[1]  In addition, Mother appeals from the order entered that same day, which changed Child's permanent placement goal from reunification to adoption. After careful review, we affirm.

We summarize the relevant factual and procedural history of this matter as follows.  The Philadelphia Department of Human Services ("DHS") received a report regarding Child in April 2014.  N.T, 6/29/2017, at 6.  Following an investigation, DHS discovered that Child was malnourished, that Mother was failing to meet Child's medical needs, and that Mother was engaging in drug

---

[1] Mother adopted Child, and he has no legal father.  N.T, 6/29/2017, at 3, 20.

use. ***Id.*** at 7. DHS further discovered that Mother's home was overcrowded, that Child was truant from school, and that Mother was forcing Child "to sell body oils on the street corner for hours throughout the day." ***Id.*** DHS obtained an order of protective custody on April 25, 2014. The trial court entered a shelter care order on April 28, 2014, and entered an order adjudicating Child dependent on May 5, 2014.

DHS filed a petition to change Child's permanent placement goal to adoption on June 13, 2017, and filed a petition to terminate Mother's parental rights to Child involuntarily on June 14, 2017.[2] The trial court conducted a termination and goal change hearing on June 29, 2017. Following the hearing, the court entered a decree terminating Mother's parental rights, and an order changing Child's goal to adoption. Mother timely filed notices of appeal on July 28, 2017, along with concise statements of errors complained of on appeal.

Mother now raises the following issue for our review. "Did the trial court err in changing the goal to adoption and terminating [Mother's] parental rights because [DHS] failed to establish by clear and convincing evidence that

_____

[2] The record reveals that DHS was initially unable to confirm whether Mother was Child's legal parent, which delayed the filing of these petitions.

[Mother] cannot or will not be able to remedy the incapacity and conditions which led to [Child's] removal[?]"[3]  Mother's brief at 3.

We review this claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

---

[3] While Mother appealed the goal change order, and purports to challenge it in her concise statement of errors complained of on appeal and statement of questions involved, the argument section of her brief focuses entirely on the termination of her parental rights.  Mother does not include any relevant legal authority relating to the goal change, and does not develop a separate goal change argument.  Thus, any challenge to the goal change is waived.  *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Section 2511(a)(2) and (b), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Instantly, the trial court found that Mother is incapable of parenting Child, and that Mother cannot, or will not, remedy her parental incapacity. Trial Court Opinion, 9/7/2017, at 18-19. The court reasoned that Mother

disappeared for two-and-a-half years following Child's adjudication of dependency, and failed to complete her reunification objectives. *Id.*

Mother argues that she will be able to remedy her parental incapacity. Mother's brief at 10. Mother contends that her incapacity resulted from substance abuse and emotional trauma, and that she is remedying these concerns by attending dual diagnosis treatment and maintaining her sobriety. *Id.* Mother further contends that she completed housing and parenting programs, and requested visits with Child. *Id.*

Our review of the record supports the trial court's findings. During the termination hearing, DHS presented the testimony of Community Umbrella Agency case manager Tyerra Griffin. Ms. Griffin testified that Mother's reunification objectives included completing a parenting capacity evaluation; attending services through the Achieving Reunification Center; addressing her parenting, housing, mental health, and drug and alcohol issues; complying with drug screens; attending Child's medical appointments; and attending visits with Child. N.T, 6/29/2017, at 8-9.

Concerning Mother's compliance with these objectives, Ms. Griffin testified that Mother disappeared shortly after Child's adjudication of dependency in May 2014, and that her whereabouts remained unknown until December 2016.[4] *Id.* at 10. Mother failed to complete a parenting capacity

_____

[4] Mother was arrested in December 2015, and pled guilty to possession of a controlled substance in July 2016. N.T, 6/29/2017, at 26, 34. She received

evaluation, failed to obtain suitable housing, and failed to attend Child's medical appointments. *Id.* at 9-11, 16. Mother visited with Child only once during his entire dependency, in June 2014.[5] *Id.* at 13-14. Mother never asked to speak with Child on the phone, and never called to inquire how Child was doing. *Id.* at 21, 37.

Ms. Griffin further testified that Mother began attending parenting classes and dual diagnosis treatment after she resurfaced in December 2016. *Id.* at 11-12, 15-16. Mother completed parenting classes in May 2017, and she continues to attend dual diagnosis treatment consistently. *Id.* at 11, 19. However, Mother's drug use remains a concern. *Id.* at 18-19. Ms. Griffin testified that Mother tested positive for marijuana and PCP on January 13, 2017. *Id.* at 18. Mother also failed to attend three recent drug screens in May and June 2017. *Id.* at 18-19.

Thus, the record confirms that Mother is incapable of parenting Child, and that Mother cannot or will not remedy her parental incapacity. The record is clear that Mother did nothing to work toward reunification with Child for two-and-a-half years after the trial court adjudicated him dependent in May 2014. By the time of the termination hearing, Child had waited over three years for a permanent and stable home. While Mother made some recent

_____

a sentence of three years' probation. *Id.* at 26. Mother testified that she was incarcerated from the time she was arrested until she pled guilty. *Id.* at 41.

[5] The trial court suspended Mother's visits in December 2016, based on the recommendation of Child's therapist. N.T, 6/29/2017, at 12-14.

progress by attending parenting classes and dual diagnosis treatment, these belated efforts are simply too little, too late. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

We next consider whether the trial court erred or abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b).[6]

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

---

[6] While Mother does not include a direct challenge to Section 2511(b) in her brief, we address it in light of the requisite bifurcated analysis.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, the trial court found that terminating Mother's parental rights would best serve Child's needs and welfare. Trial Court Opinion, 9/7/2017, at 19-20. The court reasoned that Child is bonded with his foster parent, and looks to her for safety and to meet his needs. *Id.* The court further reasoned that Child has no bond with Mother, and would not suffer irreparable harm if her parental rights were terminated. *Id.*

Our review of the record again supports the trial court's findings. As discussed above, Ms. Griffin testified that Mother has had no contact with Child since June 2014. N.T, 6/29/2017, at 13, 21. Child never mentions Mother, and does not ask to see her. *Id.* at 21-22. Ms. Griffin further testified that Child has a loving bond with his current foster parent. *Id.* at 22. Child has stated that he loves his foster family, and that he would like to be adopted and remain with them. *Id.* at 22, 28. Ms. Griffin did not believe that Child would suffer irreparable harm if the court terminated Mother's parental rights. *Id.* at 22.

Thus, the record confirms that terminating Mother's parental rights will best serve Child's needs and welfare. By the time of the termination hearing, Child had not seen Mother in three years, and it is clear that he no longer shares a significant bond with her. In contrast, Child is bonded with his foster parent, and wants to be adopted. Child will not suffer irreparable harm if

Mother's parental rights are terminated, and termination will allow Child to obtain the benefits of a permanent and stable home.[7]

Based on the forgoing, we conclude that the trial court did not abuse its discretion by involuntarily terminating Mother's parental rights, and that Mother waived any challenge to the order changing Child's permanent

---

[7] During the termination hearing, Child was represented by guardian *ad litem*, Angela Brosnan, Esquire, of the Defender Association of Philadelphia, as well as legal counsel, Lisa Visco, Enquire. In its goal change order, the trial court indicated that it would vacate the appointment of Child's legal counsel in thirty-one days, and that the Defender Association would "continue in [a] dual role." Order, 6/29/2017, at 2. On appeal, Child is represented by Donella Shaffer, Esquire, of the Defender Association, who entered her appearance as "attorney/Guardian ad litem for [Child], appellee." Praecipe for Appearance, 10/19/2017. Attorney Shaffer filed a brief in this Court, supporting the termination of Mother's parental rights and the goal change to adoption.

We are cognizant of our Supreme Court's recent decision in ***In Re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017), in which the Court held that trial courts must appoint counsel to represent the legal interests of any child involved in a contested involuntarily termination proceeding pursuant to 23 Pa.C.S.A. § 2313(a). The Court explained that a child's legal interests are distinct from his or her best interests, in that a child's legal interests are synonymous with the child's preferred outcome, while a child's best interests must be determined by the court. ***Id.*** at 174. Importantly, the Justices disagreed on whether the role of counsel may be filled by a child's dependency GAL. In the Court's lead opinion, Justice Wecht, joined by Justices Donohue and Dougherty, opined that a child's legal interests cannot be represented by his or her dependency GAL. ***Id.*** at 180-82. However, the Court's remaining four Justices disagreed with that portion of the lead opinion, and opined in a series of concurring and dissenting opinions that a child's dependency GAL may serve as his or her counsel, so long as the GAL's dual role does not create a conflict of interest. ***Id.*** at 183-93. In this case, the record is clear that Child would like to remain with his current foster family and be adopted. Thus, Attorney Shaffer's dual role as legal counsel and guardian *ad litem* does not create a conflict between Child's legal interests and best interests.

placement goal to adoption. Therefore, we affirm the court's June 29, 2017 decree and order.

Decree affirmed. Order affirmed.

Judge Lazarus joins in this memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/10/18